1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS E. MICHAELIS,

                    Plaintiff,

          v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.

CASE NO.     C04-5436RJB

REPORT AND
RECOMMENDATION

Noted for September 23, 2005

        Plaintiff, Dennis E. Michaelis, has brought this matter for judicial review of the denial of his request for review of the denial of his applications for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

        Plaintiff currently is fifty years old.[1] Tr. 50.  He completed high school through a special education program, with additional vocational training in welding. Tr. 35, 101.  He has past work experience as a logger, welder and painter. Tr. 35, 96.

_____

        [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

On February 25, 1991, plaintiff filed applications for disability insurance and supplemental security income ("SSI") benefits, alleging disability as of August 6, 1980, due to a work-related spinal injury. Tr. 34, 189.  Plaintiff was found disabled with respect to his application for SSI benefits, and he apparently received such benefits for a certain amount of time. Tr. 34.[2]  There also is some indication in the record that the determination to grant plaintiff SSI benefits was based not on his alleged physical impairments, but instead on a diagnosis of mental retardation. Tr. 64; Plaintiff's Opening Brief, Exhibit A.

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration, however, because he had not established disability prior to September 30, 1981, his date last insured. Tr. 34.  Apparently, plaintiff took no further appeal of the denial of his application.  Plaintiff filed additional applications for disability insurance benefits on January 23, 1995, and January 26, 1996, respectively, alleging disability as of August 6, 1980. Tr. 34, 40, 198.  It appears these applications were denied as well, and again, plaintiff apparently did not request an administrative hearing. Tr. 34, 43, 45.

On May 30, 2000, plaintiff filed a fourth application for disability benefits, once more alleging disability as of August 6, 1980. Tr. 50.  Up until August 24, 2000, plaintiff had not been represented by counsel in his dealings with the Social Security Administration. Tr. 55.  This latest application was denied on October 30, 2000, and plaintiff, this time represented by counsel, filed a request for hearing regarding that denial on November 13, 2000. Tr. 57.

On September 26, 2002, counsel for plaintiff requested that all prior determinations of plaintiff's disability insurance applications be re-opened. Tr. 27-29.  On December 10, 2002, plaintiff, represented by counsel, appeared and testified at a hearing held before an administrative law judge ("ALJ"). Tr. 231-58.  A vocational expert also appeared at the hearing, but did not testify. Id.  On April 16, 2003, the ALJ issued a decision in which he found in relevant part that:

(1)     there is no basis upon which to reopen the prior determinations;

(2)     the findings that plaintiff was not disabled prior to his date last insured contained in those determinations are given *res judicata* effect; and

(3)     plaintiff has not shown he was disabled prior to his date last insured.

Tr. 38.  On April 9, 2004, the Appeals Council granted plaintiff's September 26, 2002 request for review,

---

[2]Plaintiff testified he thought he had received those benefits for a period of four years, although there is no documentation of this in the record. Tr. 243-44.

1   but advised him of its intention to dismiss his November 13, 2000 request for hearing under the doctrine of

2   *res judicata*. Tr. 5, 10.  Plaintiff, however, was given the opportunity to comment on the Appeals Council's

3   proposed action. Id.

4         On June 18, 2004, the Appeals Council issued an order upholding the ALJ's rationale and finding on

5   the issue of *res judicata*, further determining that the ALJ should have dismissed plaintiff's request for

6   hearing filed on November 13, 2000. Id.  Accordingly, the Appeals council dismissed that request, stating

7   that the ALJ's decision was "of no effect" because of the dismissal. Id.  The Appeals Council also stated

8   that as a result of its decision, the Social Security Administration's 1991 determination of non-disability

9   stood as the Commissioner's final decision. Tr. 5.

10        On July 23, 2004, plaintiff filed a complaint in this court seeking review of the Appeal Council's

11  June 18, 2004 order. (Dkt. #1).  Specifically, plaintiff argues that order should be reversed and remanded

12  for an award of disability insurance benefits, because the ALJ erred in failing to re-open his prior disability

13  determinations pursuant to the requirements of Social Security Ruling ("SSR") 91-5p and in applying *res*

14  *judicata*.  Plaintiff also argues the ALJ erred in failing to infer his onset date of disability.

15        In response, defendant filed an amended motion to dismiss (Dkt. #14), arguing that because the

16  decision of the Appeals Council is not a final decision, and because plaintiff has failed to make a colorable

17  constitutional claim, the court has no jurisdiction to consider this matter.  For the reasons set forth below,

18  however, the undersigned agrees with plaintiff that the ALJ erred in failing to reopen the prior disability

19  determinations, but disagrees that the ALJ should have inferred his onset date of disability.  Accordingly,

20  the undersigned recommends the court deny defendant's motion to dismiss, and remand this matter to the

21  Commissioner for further administrative proceedings pursuant to SSR 91-5p.

DISCUSSION

22

23  I.    <u>Plaintiff's Date Last Insured</u>

24        To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on

25  or before" the date his insured status expired. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see also</u>

26  <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

27  statutory scheme requires disability to be continuously disabling from time of onset during insured status to

28  time of application for benefits, if individual applies for benefits for current disability after expiration of

REPORT AND RECOMMENDATION
Page - 3

1  insured status).  As noted above, plaintiff's date last insured was September 30, 1981. Tr. 34.  Accordingly,

2  to be entitled to disability insurance benefits, plaintiff must establish that he was disabled prior to or as of

3  that date. Tidwell, 161 F.3d at 601.

4  II.    The Commissioner Erred in Dismissing Plaintiff's Hearing Request

5          Plaintiff argues that pursuant to the requirements of SSR 91-5p, he has established he lacked the

6  mental capacity to understand the procedures for requesting review of the Social Security Administration's

7  prior non-disability determinations.  The Commissioner, plaintiff asserts, therefore was required to reopen

8  those determinations.  The undersigned agrees.

9          A.    Judicial Review of Determination Not to Reopen a Prior Final Decision

10         Judicial review of the Commissioner's administrative decisions is governed by Section 405(g) of the

11  Social Security Act, which reads in relevant part:

12         Any individual, after any final decision of the Commissioner of Social Security made
           after a hearing to which he was a party, irrespective of the amount in controversy, may
13         obtain a review of such decision by a civil action commenced within sixty days after the
           mailing to him of notice of such decision or within such further time as the Secretary
14         may allow.

15  42 U.S.C. § 405(g); See also Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited

16  to final decision made after hearing).  The Commissioner's regulations, however, "allow for further

17  consideration of an application by providing for the reopening of an agency determination." Panages v.

18  Bowen, 871 F.2d 91, 92 (9th Cir. 1989).  Under those regulations, "[a] claim may be reopened within 12

19  months of the initial determination as a matter of right, within four years 'upon a finding of good cause,'

20  and at any time for the purpose of correcting clear evidentiary errors or clerical mistakes." Id. (quoting and

21  citing 20 C.F.R. §§ 404.988-404.989).

22         The Commissioner's determination "not to reopen a prior, final benefits decision," however, "is

23  discretionary and ordinarily does not constitute a final decision." Udd, 245 F.3d at 1098-99 (citing Califano

24  v. Sanders, 430 U.S. 99, 107-09)).  As such, "it is not subject to judicial review." Id.  The Supreme Court

25  has recognized one exception to this rule "'where the [Commissioner's] denial of a petition to reopen is

26  challenged on constitutional grounds.'" Id.  This exception "applies to any colorable constitutional claim of

27  due process violation that 'implicate[s] a due process right [either] to a meaningful opportunity to be heard'

28  . . . or to seek reconsideration of an adverse benefits determination." Evans v. Chater, 110 F.3d 1480, 1483

1  (9th Cir. 1997) (citation omitted).  A constitutional challenge "that is not 'wholly insubstantial, immaterial,

2  or frivolous' raises a colorable constitutional claim." Udd, 245 F.3d at 1099 (citation omitted).

3        Of particular importance to this case, "[w]here a claimant alleges that a prior determination should

4  be reopened because he suffered from a mental impairment and was not represented by counsel at the time

5  of the denial of benefits, he has asserted a colorable claim." Id. at 1099.  A lack of representation though is

6  not required to state such a claim. Id. at 1099 n.3.  To prevail on such a claim, "an attack on the merits" of

7  the administrative decision is not sufficient. Evans, 110 F.3d at 1482.  Instead, the claim "must 'implicate a

8  due process right to a meaningful opportunity to be heard.'" Id. (citation omitted).

9        Defendant argues the court has no jurisdiction to review this matter, because there is no colorable

10  constitutional claim.  Instead of setting forth any evidence to support this argument, however, defendant

11  merely states plaintiff's "allegation of a constitutional claim is made entirely for the purpose of obtaining

12  jurisdiction and should be rejected." Defendant's Amended Motion to Dismiss, p. 8.  Needless to say, the

13  undersigned does not find this statement in itself particularly persuasive.  In any event, plaintiff claims that

14  his due process rights were violated in that he suffered from a mental impairment and was not represented

15  by counsel at the time of the prior non-disability determinations.  As noted above, this is sufficient to state a

16  colorable constitutional claim. See Udd, 245 F.3d at 1099.  As discussed below, furthermore, plaintiff has

17  presented sufficient evidence to show that such a violation in fact occurred.

18        B.      Social Security Ruling 91-5p

19        The Commissioner issued SSR 91-5p to clarify its policy on "establishing good cause for missing the

20  deadline to request" administrative review of the denial of a disability application, and to "avoid the

21  improper application of res judicata or administrative finality" when the evidence in the record "establishes

22  that a claimant lacked the mental capacity to understand the procedures for requesting review." 1995 WL

23  208067 *1.  Specifically, SSR 91-5p reads in relevant part as follows:

24        When a claimant presents evidence that mental incapacity prevented him or her from
        timely requesting review of an adverse determination . . . and the claimant had no one
25        legally responsible for prosecuting the claim (e.g., . . . legal representative) at the time of
        the prior administrative action, SSA will determine whether or not good cause exists for
26        extending the time to request review.  If the claimant satisfies the substantive criteria,
        the time limits in the reopening regulations do not apply; so that, regardless of how
27        much time has passed since the prior administrative action, the claimant can establish
        good cause for extending the deadline to request review of that action.
28
        The claimant will have established mental incapacity for the purpose of establishing good

cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.

In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
--inability to read or write;
--lack of facility with the English language;
--limited education;
--any mental or physical condition which limits the claimant's ability to do things for him/herself.

If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor of the claimant.

If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take the action which would have been appropriate had the claimant filed a timely request for review. A finding of good cause will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for a reason other than late filing) of the request for review, as appropriate.

Id. at *2.  A decision made pursuant to SSR 91-5p is reviewed "under the substantial evidence standard to determine whether the claimant lacked the requisite capacity at the time of the adverse benefits decision."[3] Udd, 245 F.3d at 1100.  If substantial evidence does not support a determination that the claimant had the requisite capacity, "the termination of his [or her] benefits constitutes a due process violation." Id.; see also Evans, 110 F.3d at 1483 (no violation if substantial evidence supports SSR 91-5p determination).

Where a claimant had no legal representation at the time of the decision, "it is the mental capacity of the claimant that determines whether the requirements of due process have been fulfilled." Udd, 245 F.3d at 1100 n.4.  The mental impairment, however, need not "'totally incapacitate' the claimant, but merely . . . 'limit [his] [or her] ability to do things for him/herself.'" Id. at 1101.  In addition, the SSR 91-5p determination "must be reversed where the ALJ fails to resolve any reasonable doubt in the claimant's favor." Id. (citing Hill v. Callahan, 962 F.Supp. 1341, 1346 (D.Or. 1997) (finding that due process required reopening because there was reasonable doubt claimant had mental capacity to understand procedures for requesting review)).

---

[3]Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

1   C.   Plaintiff Has Met the Requirements of SSR 91-5p

2       Plaintiff argues the ALJ did not comply with the requirements of SSR 91-5p, when he found that it

3   would be inappropriate to reopen the prior non-disability determinations.[4]   As noted above, under SSR 91-

4   5p, four factors must be considered in determining whether a claimant lacks the capacity to understand the

5   procedures for requesting review.  As discussed below, other than the obvious exception of lack of facility

6   with the English language, plaintiff has shown the existence of at least three of these factors.  Thus, he has

7   established the requisite lack of mental capacity to support his constitutional claim.

8                   1.      Inability to Read and Write

9       Plaintiff first argues that the record contains evidence that he has an inability to read or write.  The

10  undersigned agrees.  The phrase "inability to read or write" is not defined in SSR 91-5p.  However, 20

11  C.F.R. § 404.1564(b)(1) does define the inability to read or write (i.e., illiteracy) to mean the inability to

12  "read or write a simple message such as instructions or inventory lists even though the person can sign his

13  or her name."  In general, "an illiterate person" will be considered to be a person who "has had little or no

14  formal schooling." Id.

15      The evidence in the record regarding plaintiff's ability to read and write is mixed.  For example, in

16  late October 1981, plaintiff reported having been in special education for math, reading and spelling, and

17  that he "reads at the 4th and 5th grade level." Tr. 111.  He also reported having "difficulty reading a ruler."

18  Id.  Plaintiff did not believe he "would do well in a school retraining program, but might benefit from one on

19  one instruction." Tr. 112.

20      Plaintiff further reported enrolling in a welding course at a community college, but stated he did not

21  actually have a certificate because "he could not do the written work." Id.  However, he "expressed a desire

22  to learn to read [welding] blueprints," and it was noted that efforts were being made to assist him in using

23  an adult basic education program. Id.  It was noted as well that he "might be able to learn blueprint reading

24  in a practical manner even though he could not learn how in a regular classroom setting." Tr. 114.

25      In late December 1983, plaintiff reported that he was a high school graduate, and that he had gone

26  ─────────────────────────

27      [4]As noted above, in its June 18, 2004 order, the Appeals Council stated that because it was dismissing plaintiff's
    November 13, 2000 hearing request, the ALJ's decision was "of no effect." Tr. 5.  Accordingly, it could be argued that the ALJ's

28  decision no longer existed for plaintiff to challenge.  However, the Appeals Council expressly stated in that order that it concurred
    with and adopted the rationale and finding of the ALJ regarding the applicability of SSR 91-5p.  Accordingly, the undersigned
    finds that the same issues plaintiff raises with respect to the ALJ's decision not to reopen the prior non-disability determinations,
    apply to the decision of the Appeals Council as well.

REPORT AND RECOMMENDATION
Page - 7

"all the way through school in special education classes." Tr. 124.  He also reported receiving "additional training in college" at a welding school. Id.  Plaintiff stated that he was "placed in a reading class," and that he "was told that he was reading at a third grade level." Id.  On questioning, he did not feel he could read and could only write if he had "words to copy." Id.  Nevertheless, at the time, plaintiff was not diagnosed with any learning disorder. Tr. 127.

In early March 1991, it was noted that plaintiff had "graduated from high school in a special education program (apparently [with a] 3rd grade reading ability)." Tr. 154.  In late June 1991, plaintiff reported that "his inability to read caused him problems in school." Tr. 158.  Psychological testing performed at the time showed his reading and spelling abilities to be at below a third grade level, and his arithmetic ability to be at the beginning third grade level. Tr. 160.

At the hearing, plaintiff testified that he had trouble reading, that he did not read the newspaper, and that when he reads at home, he "just look[s] at the pictures." Tr. 241-42.  He also testified that he needed help completing a Social Security application in 1995 because he could not "read to do what they wanted me to do." Tr. 252.  Thus, although plaintiff apparently has graduated from high school, he has the ability to read and write at no greater than a third grade level.  Indeed, plaintiff has reported and testified that he has had significant trouble reading and that he can write only if he has words to copy.  Accordingly, while there may still be some question as to whether plaintiff meets the strict definition of illiteracy, it is clear that, giving him the benefit of the doubt, he is significantly impaired in these areas.

### 2.   Limited Education

It also is clear that plaintiff has at least a limited education.  In general, a person who has a "7th through the 11th grade level of formal education" is considered to have a "limited education." 20 C.F.R. § 404.1564(b)(3).  As discussed above, although plaintiff did graduate from high school, he did so only by attending special education classes, and his abilities in the areas of reading, writing and arithmetic are at the third grade level or below.  Indeed, as such, it appears that plaintiff's education level would qualify as being "marginal." See 20 C.F.R. § 404.1564(b)(2) ("We generally consider that formal schooling at a 6th grade level or less is a marginal education.").

### 3.   Mental Condition

The undersigned further agrees that plaintiff has established he has a mental condition that limits his

ability to do things for himself.  In late October 1981, plaintiff was found to have limited abilities in the areas of reading and math that made him "a poor candidate for retraining in a classroom setting or to hold clerical type jobs." Tr. 113.  On the other hand, it was noted that plaintiff was able to learn "adequately with on-the-job training" in spite of his problems with schooling, and that he "might be able to learn" to read blueprints "in a practical manner." Tr. 114.

In mid-December 1983, plaintiff underwent a psychological evaluation.  His memory was noted to be "good," and he was diagnosed as only having "[p]assive aggressive characteristics with some antisocial aspects." Tr. 127.  Plaintiff's difficulty was found to be "one of motivation," and it was recommended that he be encouraged "to continue with his self-improvement in his reading skills." Tr. 128.

Plaintiff underwent further psychological evaluation and testing in early October 1985, that showed he had a verbal I.Q. score of 71, a performance I.Q. score of 77, and a full-scale I.Q. of 72. Tr. 172.  These scores were all noted to be "in the borderline range of intelligence." Id.  With respect to plaintiff's ability to function, the evaluator at the time opined as follows:

> Mr. Michaelis shows fairly good ability at a concrete assembly task where all of the materials are in front of him. . . . Most of his other Performance and Verbal subtest scores were low, tending to reflect generally limited intellectual ability, including functions of memory, computation, social perception, and social reasoning, visual alertness and concentration, sequencing, ability to learn new material, and abstract conceptualization in visual-motor coordination.  His fund of information is significantly low, and his ability to perform verbal abstractions is virtually nil.  Mr. Michaelis does show good persistence in performance tasks . . .
>
> Information from testing, especially, suggests that Mr. Michaelis is a person of low borderline intelligence whose past work accomplishments may have been due to a fortuitous combination of circumstances which included a sufficiently structured work environment and a tolerant and understanding supervisor.  He is, as one of his supervisors has been quoted as saying, likely to be reliable worker who needs to work at his own pace and be closely supervised.
>
> What may be perceived as irresponsibility and lack of motivation in his failure to keep appointments, might be better understood as an expression of his need for reminders and other forms of structuring.  The problems he has encountered with the law seem to reflect a basic inadequacy and difficulty in comprehending and using good judgment when he is placed in complex and emotional situations.  While is might be preferable to offer Mr. Michaelis sheltered conditions of living and employment as more appropriate to his needs, he is not likely to accept sheltered employment, which he sees as beneath his abilities, inasmuch as he has functioned in competitive employment before.  However, finding him competitive employment will require the special conditions of structure mentioned, a need of which he is unaware.

Tr. 173.

During a psychological assessment completed in late June 1991, plaintiff "was slow in responding,"

1   and it appeared that he had "difficulty in interpersonal interaction." Tr. 158.  There was no indication that

2   he had any problems with thought processing, however, and there was no evidence of any hallucinatory or

3   delusional thinking. Id.  Nevertheless, psychological testing revealed plaintiff had a verbal I.Q. score of 72, a

4   performance I.Q. score of 77, and a full scale I.Q. score of 73. Tr. 159.  Again, these scores indicated he

5   was functioning in the "[b]orderline classification of intelligence." Tr. 159-60.  Other test results indicated

6   "the existence of some organic involvement in his cognitive functioning," and there was some "evidence of

7   extremely low scoring" on memory testing. Tr. 160.  On the other hand, plaintiff was deemed "capable of

8   taking care of his personal needs" and managing his everyday funds. Id.

9          In late June 1991, although plaintiff had "some difficulty" recalling specific dates, he obtained "a

10  score of 97 of 100 possible points on the Modified Mini Mental State Exam." Tr. 218.  However, it was

11  noted that there was "evidence of some pre-existing learning difficulties" that would "have an impact on

12  recovery and rehabilitation efforts." Id.  Plaintiff thus was diagnosed with "[d]evelopmental disorders, not

13  otherwise specified." Tr. 219.  Based on these disorders, it was felt that plaintiff was "on a more probable

14  than not basis, unlikely to be able to maintain gainful employment on a reasonably continuous basis," that he

15  had "not been able to do so for at least the past 12 months and would remain unlikely to do so for the next

16  12 months." Id.  Thus, psychological factors were thought to be "more of a limitation than physical factors"

17  in plaintiff's case. Id.

18         While there may be evidence in the record that plaintiff "was able to file a reconsideration request in

19  two of his prior claims without assistance from a representative or other party" (Tr. 5), and that he has been

20  able to hold jobs in the past, as noted above, there is substantial evidence in the record that he suffers from

21  significant learning impairments and other developmental disorders.  It is clear that those problems have

22  limited his ability to function at least to some extent. See Udd, 245 F.3d at 1101 (impairment need not

23  totally incapacitate claimant, but merely limit his or her ability to do things for himself of herself).  Further,

24  because plaintiff's mental impairments involve developmental and/or learning disorders, it is appropriate to

25  assume these impairments have existed since prior to his date last insured.  Therefore, giving plaintiff the

26  benefit of the doubt, he should have been found to meet this factor as well.

27  III.    Plaintiff's Other Arguments Regarding the Commissioner's Application of Res Judicata

28         In addition to arguing the ALJ erred in failing to reopen the prior non-disability determinations

REPORT AND RECOMMENDATION
Page - 10

under SSR 91-5p, plaintiff also argues that application of *res judicata* was inappropriate because those determinations were rendered without the benefit of an administrative hearing, relying on <u>Thompson v. Schweiker</u>, 665 F.2d 936 (9th Cir. 1982). Plaintiff argues that in <u>Thompson</u>, the Ninth Circuit found the ALJ in that case had improperly invoked the doctrine of *res judicata* where the claimant had failed to request a hearing on three prior disability applications. This description of the Court of Appeals' holding in that case, however, is not entirely accurate.

After noting that the ALJ "has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," the Ninth Circuit in <u>Thompson</u> reversed the ALJ's denial of the claimant's claim, because the ALJ did not fully explore all of the relevant facts regarding the claimant's impairments at the administrative hearing, which therefore denied the claimant a full hearing under the Commissioner's regulations. <u>Thompson</u>, 665 F.2d 936 at 941. Thus, while in that case the claimant did have three prior applications denied without a hearing, it was only with respect to the ALJ's conduct at the hearing that the Ninth Circuit found fault with the ALJ applying *res judicata* to the prior applications. <u>Id.</u> at 938-41. Accordingly, <u>Thompson</u> is inapplicable here.

Plaintiff further argues the ALJ conducted a *de facto* reopening of the prior determinations. The doctrine of *res judicata* "should not be rigidly applied in administrative proceedings." As discussed above, the Commissioner may apply *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application," and, in general, the refusal to reopen a decision regarding an earlier period "is not subject to judicial review." <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1996). Another exception to this rule is "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." <u>Lester</u>, 81 F.3d at 827; <u>Lewis v. Apfel</u>, 236 F.3d 503, 510 (9th Cir. 2001).

If "such a *de facto* reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review." <u>Lester</u>, 81 F.3d at 827. However, "where the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable." <u>Krumpelman</u>, 767 F.2d at 589 (citing <u>McGowen v. Harris</u>, 666 F.2d 60, 68 (4th Cir. 1981)). Here, while it is true that the ALJ did discuss evidence in the record regarding plaintiff's impairments, some of which dated from around the time of plaintiff's date last

1  insured, he expressly concluded on *res judicata* grounds that there was no basis to reopen the prior non-
2  disability determinations.  As such, no *de facto* reopening of those determinations occurred.

3  IV.      The ALJ Did Not Err in Failing to Infer an Onset Date of Disability

4          Lastly, plaintiff argues the ALJ erred in failing to infer his onset date of disability, relying on SSR
5  83-20, which sets forth the Commissioner's policy when establishing a claimant's onset date of disability.
6  Plaintiff's reliance on SSR 83-20, however, is misplaced.  That ruling will come into play only <u>after</u> the
7  claimant has met the "ultimate burden" of proving disability prior to the expiration of his or her insured
8  status. <u>Armstrong v. Commissioner of the Social Security Administration</u>, 160 F.3d 587, 590 (9th Cir.
9  1998).  In other words, it is only when the claimant has established disability <u>and</u> the "record is ambiguous
10  as to the onset date of disability," does SSR 83-20 require the ALJ to "assist the claimant in creating a
11  complete record" that "forms a basis for" establishing a disability onset date. <u>Id.</u>

12          Here, the ALJ did not find plaintiff had established disability prior to his date last insured.  Further,
13  while both the ALJ and Appeals Council erred in failing to reopen the prior non-disability determinations,
14  "[o]rdinarily, when a due process violation requires that an application for benefits be reopened, the case is
15  remanded to the Commissioner so that the agency can rule on the merits of the plaintiff's disability claims in
16  the first instance." <u>Udd</u>, 245 F.3d at 1102.  Plaintiff argues there is medical and other evidence in the record
17  to make a reasonable inference that his onset date of disability was his alleged onset date of August 6, 1980.
18  Unlike in <u>Armstrong</u> and <u>Morgan v. Sullivan</u>, 945 F.2d 1079 (9th Cir. 1991), the other case that plaintiff
19  cites, and as noted above, plaintiff's disability for purposes of entitlement to disability insurance benefits has
20  not yet been established.

21          Indeed, while the evidence in the record does indicate plaintiff has significant mental impairments, it
22  is not at all clear that those impairments are disabling.  It also is true that there is a notation in the record to
23  the effect that plaintiff was found disabled for purposes of his 1991 application for SSI benefits based on a
24  diagnosis of mental retardation, and that he apparently received such benefits for a certain period of time.
25  However, there is no indication in the record as to what evidence was actually relied upon in making that
26  determination, even if it was based on a diagnosis of mental retardation.

27          Second, plaintiff's reliance on 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 to support his
28  argument is misplaced.  A claimant will be found to have met the listed requirements for mental retardation

REPORT AND RECOMMENDATION
Page - 12

1  under Section 12.05, if he or she demonstrates "significantly subaverage general intellectual functioning

2  with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

3  demonstrates or supports onset of the impairment before age 22," and satisfies one of four sets of additional

4  criteria. <u>Id.</u>  Here, however, there has been no showing that plaintiff met these requirements, or that the

5  Social Security Administration's determination regarding his prior SSI application was based on the fact

6  that he met these criteria.[5]  Indeed, the fact that plaintiff received SSI benefits for only a limited period of

7  time would tend to indicate he did not meet those requirements.

8                                              <u>CONCLUSION</u>

9          Based on the foregoing discussion, the court should find the Commissioner improperly dismissed

10  plaintiff's November 13, 2000 request for hearing under the doctrine of <i>res judicata</i>, and erred in finding

11  the provisions of SSR 91-5p to be inapplicable.  Accordingly, the court should deny defendant's motion to

12  dismiss, and remand this matter to the Commissioner to extend the time for requesting review of the Social

13  Security Administration's prior non-disability determinations, and to take such further action as is deemed

14  appropriate under SSR 91-5p.

15          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

16  the parties shall have ten (10) days from service of this Report and Recommendation to file written

17  objections thereto.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

18  objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

19  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 23,**

20  **2005**, as noted in the caption.

21          DATED this 30th day of August, 2005.

24                                              Karen L. Strombom
                                                United States Magistrate Judge

27

28          [5]Again, while the record does appear to contain a notation indicating plaintiff was granted SSI benefits based on a
diagnosis of mental retardation (Tr. 64), that notation is not accompanied by any medical evidence to support a finding that
plaintiff met all of the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

REPORT AND RECOMMENDATION
Page - 13